UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | Criminal No.   22cr10042 |
|  | ) | Violations: |
| v. | ) ) |  |
|  | ) | Count One: Wire Fraud |
| RONALD BUIE, | ) | (18 U.S.C. § 1343) |
|  | ) |  |
| Defendant | ) | Forfeiture Allegation: |
|  | ) | (18 U.S.C. § 981(a)(1)(C) and |
|  | ) | 28 U.S.C. § 2461(c)) |
|  | ) |  |

INFORMATION

At all times relevant to this Information:

General Allegations

1.     The defendant, Ronald Buie ("BUIE"), resided in New York City.

2.     Platinum Car Service, LLC was a livery / transportation business operated by BUIE.

3.     The United States Small Business Administration ("SBA") was an agency of the executive branch of the United States government.  The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.  As part of this effort, the SBA enabled and provided for loans, guaranteed by the government, through banks, credit unions, and other lenders.

4.     The Massachusetts Department of Unemployment Assistance ("DUA") was a state agency headquartered in Boston, Massachusetts.

5.     The Ohio Department of Job and Family Services ("ODJFS") was a state agency headquartered in Columbus, Ohio.

1

6.     JP Morgan Chase Bank, N.A. ("Chase") was a bank headquartered in New York City.

The CARES Act

*A. The Economic Injury Disaster Loan Program*

7.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering the economic effects of the COVID-19 pandemic.  Among other things, the CARES Act expanded the SBA's Economic Injury Disaster Loan ("EIDL") program to provide loans of up to $2 million to small businesses that suffered "substantial economic injury" from COVID-19.  The EIDL program required recipients to use EIDL funds only on certain business expenses, including payments of fixed business debts and payroll.

8.     EIDL funds were issued directly from the United States Treasury.  Applicants applied through the SBA via an online portal.  The EIDL application process required applicants to provide information concerning the affected business, including the number of employees, gross revenues, and costs of goods sold in the 12 months prior to January 31, 2020, as well as information about the business owner.  Applicants electronically certified that the information provided was accurate.

9.     The SBA relied on the information provided by the applicant to determine how much money the small business was eligible to receive in the form of EIDL funds.  Additionally, by checking a box in the online EIDL application, an applicant could request and receive $1,000 per employee, up to $10,000, in an EIDL Cash Advance Grant.  The applicant was not required to

2

repay an EIDL Cash Advance Grant, even if (i) the SBA ultimately denied the EIDL application or (ii) the applicant ultimately declined the loan.

### B. The Paycheck Protection Program

10.     The CARES Act also provided funding for forgivable loans to small businesses for job retention and certain other expenses through the Paycheck Protection Program ("PPP").

11.     In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and make certain affirmative certifications.  In the PPP loan application (SBA Form 2483), the small business, through its authorized representative, was required to state, among other things, (i) the number of individuals it employed and (ii) its average monthly payroll expenses.  These figures were used to calculate the amount of a PPP loan the small business was eligible to receive.  In addition, businesses applying for a PPP loan were required to provide documentation of their payroll expenses.

12.     A PPP loan application was processed by a participating lender.  If a PPP loan application was approved, the participating lender funded the PPP loan using its own money, but the loan was guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

13.     PPP loans were required to be used to pay for certain expenses—including payroll costs, mortgage interest, rent, and utilities—and were forgivable if used for these expenses within a designated period of time and if a certain portion of the proceeds were applied toward payroll.

*C. Pandemic Unemployment Assistance*

14.     The CARES Act also created a temporary federal unemployment insurance program called Pandemic Unemployment Assistance ("PUA").  PUA provided unemployment benefits for individuals who were not eligible for other types of unemployment benefits, including those who were self-employed, independent contractors, or gig economy workers.

15.     DUA administered and managed PUA benefits in Massachusetts.

16.     ODJFS administered and managed PUA benefits in Ohio.

The Scheme to Defraud

17.     Beginning in or around March 2020, and continuing until at least in or around May 2021, BUIE devised and executed a scheme to fraudulently obtain pandemic-related relief funds— including PPP funds, EIDL funds, and PUA benefits—by submitting false and fraudulent information in connection with his loan or PUA applications.

18.     In furtherance of his scheme to defraud, BUIE utilized numerous false names (each, an "Imposter Identity") and false Social Security numbers (each, an "SSN") to submit loan or PUA applications.  BUIE also submitted fraudulent documents – for example, fraudulent W-2 wage and tax statements or fraudulent Social Security cards – in support of these applications.  BUIE opened and used various bank accounts, credit card accounts, and digital payment accounts using the Imposter Identities and/or fraudulent SSNs.  BUIE possessed numerous fake driver's licenses, each of which bore his photograph but the name of an Imposter Identity.

*Sample Fraudulent Applications*

19.    In or around May 2020, BUIE submitted an application for Massachusetts PUA benefits under an Imposter Identity.  Application materials listed a false SSN and false wage information.  As a result of this application, DUA transferred benefits exceeding $7,900 on May 20, 2020 via interstate wire into a Chase bank account controlled by BUIE.

20.    In or around June 2020, BUIE submitted an application for a PPP loan for Platinum Car Service, LLC.  Included with the application materials was a forged monthly statement for February 2020 for a business checking account for Platinum Car Service, LLC that listed monthly deposits and additions of $125,883.63, and an ending balance of $198,699.31.  As a result of this application, SBA loan proceeds of $60,000 were deposited into an account controlled by BUIE.

21.    In or around June 2020, BUIE submitted an application for Ohio PUA benefits under an Imposter Identity.  Application materials listed a false SSN and false wage information.  As a result of this application, ODJFS transferred PUA benefits of at least $14,904 to one or more accounts controlled by BUIE.

22.    In or around June 2020, BUIE submitted an application for a PPP loan for a business, listing an Imposter Identity as the business owner.  Application materials falsely reported the annual revenue for this business as exceeding $926,000.  As a result of this application, SBA loan proceeds of $112,600 were deposited into an account controlled by BUIE.

23.    In or around June 2020, BUIE submitted an application for Massachusetts PUA benefits under an Imposter Identity.  Application materials listed a false SSN and false wage information.  As a result of this application, DUA transferred benefits exceeding $16,000 into one or more bank accounts controlled by BUIE.

24.     In or around August 2020, BUIE submitted an application for an EIDL for a sole proprietorship, listing an Imposter Identity as the business owner.  Application materials falsely reported the annual revenue for this sole proprietorship as exceeding $327,000.  As a result of this application, SBA loan proceeds of $64,900 were deposited into an account controlled by BUIE.

COUNT ONE
Wire Fraud
(18 U.S.C. § 1343)

The United States Attorney charges:

25.    The United States Attorney re-alleges and incorporates by reference paragraphs 1-24

of this Information.

26.    On or about the date set forth below, in the District of Massachusetts and elsewhere,

the defendant,

RONALD BUIE,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money

and property by means of materially false and fraudulent pretenses, representations, and promises,

did transmit and cause to be transmitted by means of wire communications in interstate and foreign

commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme

to defraud, as set forth below:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 1 | May 20, 2020 | DUA transmission of payment of PUA benefits to Chase Bank account controlled by BUIE |

All in violation of Title 18, United State Code, Section 1343.

7

FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

27.    Upon conviction of the offense in violation of Title 18, United States Code, Section 1343, set forth in Count One, the defendant,

RONALD BUIE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.  The property to be forfeited includes, but is not limited to, the following:

    a.  $285,697, to be entered in the form of a forfeiture money judgment.

    b.  $5,000 in United States currency seized from a residence in East Elmhurst, New York on January 26, 2022.

28.    If any of the property described in Paragraph 27, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant –

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty;

8

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property

of the defendant up to the value of the property described in Paragraph 27 above.

   All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United

States Code, Section 2461(c).


           RACHAEL S. ROLLINS
           United States Attorney


By: _____
           WILLIAM F. ABELY
           Assistant U.S. Attorney


Dated: February 22, 2022