

U.S. Department of Justice

*Rachael S. Rollins*
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

March 15, 2022

Kenneth Montgomery, Esq.
198 A Rogers Ave
Brooklyn, NY 11225

    Re:    United States v. Ronald Buie
            Criminal No. 1:22-cr-10042-DPW

Dear Mr. Montgomery:

The United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Ronald Buie ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

1.    Change of Plea

Defendant will waive Indictment and plead guilty to count One of the Information: wire fraud, in violation of 18 U.S.C. § 1343. Defendant admits that Defendant committed the crimes specified in these counts and is in fact guilty of each one.

Defendant agrees to the accuracy of the attached statement of facts.

2.    Penalties

Defendant faces the following maximum penalties: incarceration for 20 years; supervised release for 3 years; a fine of $250,000; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Information.

3.    Sentencing Guidelines

The parties agree, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 20:

a) Defendant's base offense level is 7, because the offense of wire fraud carries a statutory maximum term of imprisonment of 20 years (USSG § 2B1.1(a)(1));

b) Defendant's offense level is increased by 12, because the loss was more than $250,000 (USSG § 2B1.1(b)(1)(G));

c) Defendant's offense level is increased by 2, because the offense involved sophisticated means and Defendant intentionally engaged in and caused the conduct constituting sophisticated means (USSG § 2B1.1(b)(10)(C));

d) Defendant's offense level is increased by 2, because the offense involved the unauthorized transfer or use of means of identification to produce or obtain another means of identification (USSG § 2B1.1(b)(11)(C)); and

e) Defendant's offense level is decreased by 3, because Defendant has accepted responsibility for Defendant's crime (USSG § 3E1.1).

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crime(s) to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the U.S. Attorney reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4. <u>Sentence Recommendation</u>

The U.S. Attorney agrees to recommend the following sentence to the Court:

a) incarceration at the low end of the Guidelines sentencing range as calculated by the parties in Paragraph 3;

b) a fine within the Guidelines sentencing range as calculated by the parties in

        Paragraph 3, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine;

    c) 24 months of supervised release;

    d) a mandatory special assessment of $100, which Defendant must pay to the Clerk of the Court by the date of sentencing;

    e) restitution of $285,697; and

    f) forfeiture as set forth in Paragraph 5.

Defendant may recommend an alternate sentence.

5.    <u>Forfeiture</u>

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

    a. $285,697, to be entered in the form of an Order of Forfeiture (Money Judgment).

Defendant admits that these assets are subject to forfeiture on the grounds that they constitute or are derived from proceeds traceable to the offense.

Defendant also admits that $285,697 is subject to forfeiture on the grounds that it is equal to the amount of proceeds the defendant derived from the offense. The government agrees to credit the forfeiture money judgment with any net proceeds derived from the forfeiture of the specific asset listed in item a.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents the amount of proceeds that the Defendant obtained (directly or indirectly), and/or facilitating property and/or property involved in, the crimes to which Defendant is pleading guilty and that, due at least in part to the acts of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

Defendant agrees to assist fully in the forfeiture of the foregoing assets. Defendant agrees to promptly take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

6. Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

7. Breach of Plea Agreement

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to

withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

8.  Who is Bound by Plea Agreement

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

9.  Modifications to Plea Agreement

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

\*    \*    \*

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Bill Abely.

Sincerely,

RACHAEL S. ROLLINS
United States Attorney

By: _____
Anne Paruti
Chief, Major Crimes Unit
Mark Grady
Deputy Chief, Major Crimes Unit

_____
Bill Abely
Assistant U.S. Attorney

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crime I am pleading guilty to, and the maximum penalties for that crime. I have discussed the Sentencing Guidelines with my lawyer and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me and we have had enough time to meet and discuss my case. We have discussed the charge against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offense. I believe this Agreement is in my best interest.

_____
Ronald Buie
Defendant

Date: 3/10/22

I certify that Defendant Ronald Buie has read this Agreement and that we have discussed what it means. I believe Defendant Ronald Buie understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

_____
Kenneth Montgomery
Attorney for Defendant

Date: 3/11/22

Statement of Facts

1. At all relevant times, Defendant resided in New York and owned and operated Platinum Car Services LLC ("Platinum"), a livery business.

2. Between approximately March 2020 and continuing into 2021, Defendant devised and engaged in a scheme to defraud involving the submission of fraudulent application for government benefits created or expanded under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") by submitting false or fraudulent applications for Pandemic Unemployment Assistance ("PUA") benefits and for Small Business Administration ("SBA") loans – specifically, for Paycheck Protection Program ("PPP") loans and Economic Injury Disaster Loans ("EIDLs").

3. In furtherance of this scheme to defraud, Defendant used various stolen or fabricated identities – including the names Darren Lawson, Darnell Lawson, Donald Lawson, Jason Ridgeway, and Orlando Iran – to open bank or credit accounts. Defendant also produced or obtained counterfeit identification documents, Social Security cards, bank documents, and tax documents reflecting these stolen or fabricated identities.

4. Among the fraudulent applications submitted in connection with Defendant's scheme to defraud were the following:

    a. Application for SBA loan for Platinum submitted in or around June 2020. Application materials misstated Platinum's annual revenue and included a forged bank statement. As a result of this application, SBA loan proceeds of $60,000 were deposited into an account controlled by Defendant.

    b. Application for Massachusetts PUA benefits for Orlando Iran submitted in or around May 2020. Application materials listed false wage information. As a result of this application, PUA benefits of at least $7,900 were transmitted on May 20, 2020 via interstate wire into a Chase account controlled by Defendant under the name Darnell Lawson.

    c. Application for Ohio PUA benefits for Darren Lawson submitted in or around June 2020. Application materials listed a false Social Security number ("SSN") and false wage information. As a result of this application, PUA benefits of at least $14,904 were transmitted to one or more accounts controlled by Defendant.

    d. Application for Ohio PUA benefits for Donald Lawson submitted in or around June 2020. Application materials listed a false SSN and false wage information. As a result of this application, PUA benefits of at least $15,876 were transmitted to one or more accounts controlled by Defendant.

    e. Application for SBA loan for AgroProductora Agrosol, Inc., listing owner Orlando Iran, submitted in or around June 2020. Application materials falsely reported the revenue for AgroProductora Agrosol, Inc. As a result of this application, SBA loan

       proceeds of $112,600 were deposited into an account controlled by Defendant.

    f. Application for Massachusetts PUA benefits for Defendant submitted in or around June 2020. Application materials falsely stated that Defendant worked in Massachusetts when impacted by COVID-19 and that he did not work in any other state. As a result of this application, PUA benefits of at least $16,875 were transmitted to one or more accounts controlled by Defendant.

    g. Application for Ohio PUA benefits for Jason Ridgeway submitted in or around July 2020. Application materials listed a false SSN and false wage information. As a result of this application, PUA benefits of at least $15,876 were transmitted to one or more accounts controlled by Defendant.

    h. Application for SBA loan for Darren Lawson submitted in or around August 2020. Application materials falsely reported the revenue for a supposed printing/graphic design business. As a result of this application, SBA loan proceeds of $64,900 were deposited into an account controlled by Defendant, although this deposit was thereafter reversed.

    i. Applications for SBA loans connected to Jason Ridgeway, which resulted in deposits of $41,666 to an account controlled by Defendant in April/May 2021.

5. In addition, Defendant assisted an associate with obtaining fraudulent tax documents to support two SBA loan applications, and coordinated the payment between his associate and another individual who prepared these fraudulent tax documents.